

IN THE

# Court of Appeals of Indiana

Dewitt Hemphill Sr.,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Aug 10 2026, 8:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

August 10, 2026

Court of Appeals Case No.
25A-CR-3265

Appeal from the Marion Superior Court

The Honorable Charles F. Miller, Judge

Trial Court Cause No.
49D29-2401-F1-1189

**Opinion by Judge Weissmann**
Judges Bailey and Brown concur.

**Weissmann, Judge.**

[1] Dewitt Hemphill Sr. was jointly tried for and convicted of molesting both his 7-year-old granddaughter and an 11-year-old family friend. At trial, Hemphill's granddaughter testified that Hemphill fondled her vagina with his fingers while she slept in his bed with him and her grandmother during an overnight visit in 2015. The family friend testified that Hemphill had sexual intercourse with her three different times in 2017 after inviting her over to watch movies, tricking her into his bedroom, and forcing her onto his bed. The family friend also testified that, on other occasions, Hemphill showed her pornographic videos and used a vibrator on her vagina.

[2] Hemphill appeals his convictions, arguing that the trial court erred by denying his pretrial motion to sever the charged offenses. He claims the charges were joined solely on the ground that they were of the same or similar character, entitling him to mandatory severance. The State contends that severance was discretionary, claiming the charges were joined because each offense was based on "a series of acts connected together or constituting parts of a single scheme or plan." Ind. Code § 35-34-1-9(a)(2).

[3] Contrary to the State's claim, Hemphill's charged offenses did not share a common *modus operandi* simply because they all occurred in his bedroom. We also find that his position of trust with each victim and alleged motive to molest them—to satisfy his own sexual desires—speak more to the general character of child molesting than to a single scheme or plan. Without more, these

commonalities did not sufficiently connect the offenses under Indiana Code § 35-34-1-9(a)(2). We conclude that severance was mandatory, not discretionary, and that the trial court erred by denying Hemphill's motion to sever the charges by victim. We therefore reverse and remand for further proceedings consistent with this opinion.

## Facts

[4] Hemphill's granddaughter, D.K., and family friend, S.K., do not know each other. But in 2015 and 2023, respectively, each child reported being molested by Hemphill. Police separately investigated the reports, and the State eventually charged Hemphill with ten offenses. Two of the charges were dismissed prior to trial. The remaining offenses and their alleged victims were as follows:

| Count III | Level 1 felony child molesting, D.K. |
| Count IV | Level 4 felony child molesting, D.K. |
| Count V | Level 1 felony child molesting, S.K. |
| Count VI | Level 4 felony child molesting, S.K. |
| Count VII | Level 6 felony dissemination of matter harmful to minors, S.K. |
| Count VIII | Level 6 felony intimidation, S.K. |
| Count IX | Level 1 felony child molesting, S.K. |
| Count X | Level 1 felony child molesting, S.K. |

[5] Prior to trial, Hemphill moved to sever Counts III and IV from Counts V through X so that the charged offenses involving his granddaughter, D.K.,

would be tried separately from those involving the family friend, S.K. The trial court denied the motion after a hearing, and the case proceeded to a single jury trial on all eight charges.

[6] At trial, Hemphill's granddaughter, D.K., testified to the following facts. She had a good relationship with her paternal grandmother (Grandmother) as a child and would regularly spend the night at Grandmother's home. Her paternal grandfather, Hemphill, lived separately from Grandmother, but on occasion, Grandmother would take her to Hemphill's apartment. Once, in 2015, when D.K. was 7 years old, she and Grandmother spent the night with Hemphill at his apartment. All three slept in Hemphill's bed with Hemphill in the middle. While D.K. was sleeping that night, Hemphill reached into her pants, beneath her underwear, and began "grazing" her vagina with his fingers. Tr. Vol. II, p. 170.

[7] In proving the charged offenses involving D.K., the State also presented the testimony of: (1) D.K.'s mother, to whom D.K. first reported being molested by Hemphill; (2) two police detectives, who investigated D.K.'s report; and (3) a forensic child interviewer, who interviewed D.K. about the molestation. None of these witnesses testified about S.K.

[8] The family friend, S.K., testified to the following facts at trial. Hemphill was a "family friend," whom she viewed as an "uncle." Tr. Vol. III, p. 26. In 2017, Hemphill lived near S.K. and would often pick her up and take her to his apartment to watch movies in his living room. Eventually, during these movie

viewings, Hemphill began rubbing S.K.'s inner thighs and "upper body" with his hands. *Id.* at 34. During later visits, Hemphill would also "trick" S.K. into his bedroom by asking her to retrieve something and then following her there. *Id.* at 58-59. Once in the bedroom, Hemphill sometimes showed S.K. videos of people having sex. Other times, he touched her vagina with a vibrator. And on three occasions over the course of several weeks, Hemphill pushed S.K. onto his bed, removed her clothes, and had sexual intercourse with her.

[9]     In proving the charged offenses involving S.K., the State also presented the testimony of: (1) a police officer, to whom S.K. first reported being molested by Hemphill; (2) a third police detective, who investigated S.K.'s report; and (3) an Indiana Department of Child Services caseworker, who interviewed S.K. about the molestations. None of these witnesses testified about D.K.

[10]    The jury found Hemphill not guilty of Count III (Level 1 felony child molesting, D.K.) and Count VIII (Level 6 felony intimidation, S.K.) but guilty of the other six charges. Accordingly, the trial court entered judgments of conviction against Hemphill on Counts V, IX, and X (all Level 1 felony child molesting, S.K.); Counts IV and VI (both Level 4 felony child molesting, D.K. and S.K., respectively); and Count VII (Level 6 felony dissemination of matter harmful to minors, S.K.). The court later sentenced Hemphill to a total of 45 years in prison.

## Discussion and Decision

[11] Hemphill appeals his six convictions, arguing that the trial court erred by denying his motion to sever the charged offenses involving his granddaughter, D.K., from those involving the family friend, S.K. This argument implicates two related statutes: Indiana Code § 35-34-1-9 (Joinder Statute), and Indiana Code § 35-34-1-11 (Severance Statute).

[12] Subsection (a) of the Joinder Statute provides, in pertinent part:

> Two (2) or more offenses may be joined in the same indictment or information, with each offense stated in a separate count, when the offenses:
>
> (1) are of the same or similar character, even if not part of a single scheme or plan; or
>
> (2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

Ind. Code § 35-34-1-9(a).

[13] Subsection (a) of the Severance Statute provides, in pertinent part:

> Whenever two (2) or more offenses have been joined for trial in the same indictment or information solely on the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses. In all other cases the court, upon motion of the defendant or the prosecutor, shall grant a severance of offenses whenever the court determines that

severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering:

(1) the number of offenses charged;

(2) the complexity of the evidence to be offered; and

(3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

Ind. Code § 35-34-1-11(a).

[14] When the two statutes are read together, severance is mandatory under the Severance Statute if two or more offenses are joined solely under subsection (a)(1) of the Joinder Statute. *Pierce v. State*, 29 N.E.3d 1258, 1265 (Ind. 2015). But severance is discretionary under the Severance Statute if two or more offenses are joined under subsection (a)(2) of the Joinder Statute. *Id.* Here, there is no dispute that all of Hemphill's charged offenses were of the same or similar character and, thus, were joinable under subsection (a)(1) of the Joinder Statute. The question is whether the offenses were based on "a series of acts connected together or constituting parts of a single scheme or plan," such that they were also joinable under subsection (a)(2). If so, severance was discretionary, not mandatory.

[15] To determine whether offenses were joined under subsection (a)(2) of the Joinder Statute, "we ask whether the operative facts establish a pattern of activity beyond mere satisfaction of the statutory elements." *Id.* "It is well-settled that a common *modus operandi* and motive can sufficiently link crimes

committed on different victims." *Id.* "But establishing the defendant's unique method of committing the crimes is not the exclusive way of showing his acts are connected together." *Id.* "Offenses can also be linked by a defendant's efforts to take advantage of his special relationship with the victims." *Id.* "A common relationship between the defendant and the victims may even result in an interconnected police investigation into the crimes, producing overlapping evidence." *Id.*

[16] The State argues that Hemphill's charged offenses were connected by a common *modus operandi*, similar relationships, and identical motives. It likens this case to *Pierce*, in which the defendant—Daniel Pierce—was jointly charged with molesting his granddaughter, two step-granddaughters, and great-niece. Pierce sought to sever the charges by victim, and our Supreme Court ruled that severance was discretionary, not mandatory, under the Severance Statute. *Id.* The Court explained:

> Pierce exploited his position of a trusted grandfather or great uncle by molesting young female family members in his care. The investigation into allegations made by [one victim] in her interview led police to identify additional victims. Indeed, much of the evidence overlaps, as the various caretakers testified to their observations of Pierce's inappropriate behavior toward the girls. And Pierce's method was consistent. He invited each granddaughter to spend the night at his home, when no other children would be present. He touched all four girls' breasts or vaginas with his hands, attempting to use his mouth on the vaginas of the two youngest girls. Regarding his motive, . . . Pierce's activity toward all four girls was driven by his aim to fulfill his sexual desires.

> We decline to require separate trials as of right where the defendant committed the same crime, in substantially the same way, against similar victims. Because Pierce's criminal acts were sufficiently connected together, he was not entitled to severance.

*Id.* at 1266-67.

[17] *Pierce* is distinguishable from Hemphill's case in several respects. In *Pierce*, the defendant used the same approach to access every victim. He invited each girl to spend the night at his home when no other children were present. *Id.* The record in Hemphill's case revealed a different approach for each victim. Hemphill's granddaughter, D.K., was already at Hemphill's home when he molested her. Grandmother had brought her there for a sleepover, and both were sleeping with Hemphill in his bed when the molestation occurred. In contrast to this seemingly opportunistic crime, Hemphill premeditatedly molested the family friend, S.K. He lured her to his apartment under the pretext of watching movies and, once alone with her, tricked her into his bedroom to molest her. These are two distinct approaches to child molesting.

[18] The defendant in *Pierce* also molested every victim in similar ways. He touched each girl's breasts or vagina with his hands and attempted oral sex with the two youngest girls. *Id.* In contrast, Hemphill's molestations of his granddaughter, D.K., and the family friend, S.K., looked nothing alike. He touched D.K.'s vagina with his fingers on one occasion; his abuse of S.K. unfolded over several weeks. Hemphill rubbed S.K.'s thighs and body, showed her pornography, used a vibrator on her, and eventually had sexual intercourse with her three separate

times. A single touching during sleep is not "the same crime, in substantially the same way," as a month-long escalation to intercourse. *See id.* at 1266.

[19] Given the distinct methods by which Hemphill molested his granddaughter, D.K., and family friend, S.K., the charged offenses did not share a common *modus operandi*. *But see Craig v. State*, 730 N.E.2d 1262, 1264-65 (Ind. 2000) (finding common *modus operandi* where defendant separately molested two girls in the same week by asking them to take a "taste test," covering their eyes with tape, inserting his penis into their mouths, and instructing them to suck on it). We also do not find Hemphill's charged offenses sufficiently connected by his relationships with D.K. and S.K. or his alleged motive to molest them.

[20] The State claims that, as D.K.'s grandfather and S.K.'s "uncle," Tr. Vol. III, p. 26, Hemphill abused similar positions of trust in molesting each victim. It also asserts that Hemphill had the same motive in molesting both D.K. and S.K.— to satisfy his sexual desires. But a position of trust and sexual desires are often present in child molesting offenses. Without more, they do not justify joinder under subsection (a)(2) of the Joinder Statute. *See Pierce*, 29 N.E.3d at 1266-67 (finding child molesting offenses sufficiently connected by common method, interconnected police investigation, and overlapping evidence in addition to similar relationships and identical motives); *Craig*, 730 N.E.2d at 1264-65 (finding same based on common method and close temporal proximity in addition to identical relationships and motives).

[21] Notably, in *Pierce*, one victim's disclosure led police to discover the other three victims. 29 N.E.3d at 1266. The same witnesses also testified about observing the defendant engage in inappropriate behavior with each of the girls. Here, there was no such overlap in police investigation or the evidence presented at trial. Hemphill's granddaughter, D.K., and family friend, S.K., did not know each other, and their reports of being molested by Hemphill came eight years apart. Moreover, the allegations were investigated separately, and nothing in the record suggests that the two cases were treated as connected before the State chose to join them for trial. As tried, the charged offenses involving D.K. and S.K. also shared no common witnesses, and none of the evidence used to prove the charges involving one victim bore on those involving the other.

[22] On these facts, we conclude the charged offenses involving Hemphill's granddaughter, D.K., were joined with those involving the family friend, S.K., solely on the ground that they were of the same or similar character. Severance was therefore mandatory under Indiana Code § 35-34-1-11(a). Finding the trial court erred by denying Hemphill's motion to sever the charges by victim, we reverse and remand for further proceedings consistent with this opinion.[1]

Bailey, J., and Brown, J., concur.

---

[1] Hemphill also argues that the trial court erred by failing to advise him of the consequences of being a credit restricted felon, as required by Indiana Code § 35-38-1-7.8(c). Because we reverse Hemphill's convictions and remand, this issue is moot.

ATTORNEY FOR APPELLANT

Eugene A. Kress
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Robert M. Yoke
Deputy Attorney General
Indianapolis, Indiana